BLYTHESWOOD, The (MACPHERSON v.). See Case No. 8,920.

———

## Case No. 1,584.

### BOALER v. CUMMINES.

[10 Leg. Int. 122;[1] 1 Am. Law Reg. 654; 5 Pa. Law J. Rep. 246.]

District Court, E. D. Pennsylvania. July Term, 1853.

FUGITIVES FROM LABOR — ACTS OF 1793 AND 1850 —APPRENTICE.

1. The clause of the constitution and the provisions of the acts of congress of 1793 [1 Stat. 302] and 1850 [9 Stat. 462], providing for the rendition of persons held to labor, include apprentices.

2. Where C. had bound himself an apprentice in Delaware, with the assent of his father, who lived in Pennsylvania, and the latter had, upon one occasion, returned C. to his master, from whom he had absconded, *held*, that C. might be arrested by virtue of a commissioner's warrant, and remanded to his master as a fugitive.

This was a hearing, upon habeas corpus. [Denied.]

It appeared that William Cummines, Jr., had, with the knowledge, if not with the assent, of his father, who resided in Pennsylvania, been apprenticed to the claimant

[1] [Reprinted from 10 Leg. Int. 122, by permission.]

[James M. Boaler] under the Delaware act of 5th February, 1827 (Rev. Laws Del. 1852, p. 224), which provides that minors over fourteen years of age, and not having parents or guardian within the state of Delaware, may validly apprentice themselves till the age of twenty-one, if with the assent of two justices of the peace; that the boy having before escaped from his master was returned to him by the father; that having again escaped he was arrested upon a warrant under the "Fugitive Act" of 1850 [9 Stat. 462], carried before the commissioner, by whom the warrant was issued, and the case partially heard, but, at the suggestion of the commissioner, the fugitive was remanded for a further hearing and this writ taken, returnable before his honor, Judge Kane.

The court intimated that the warrant of arrest and the affidavit of the claimant, on which it issued, constituted a sufficient cause for holding the boy, and were a good return to the writ; but, at the desire of the commissioner, (Charles F. Heazlitt, Esq.,) his honor, Judge Kane, sat with the commissioner as advising him.

The facts being fully proved, Crabbe, for the claimant, (J. Murray Rush was w___ him,) argued:

I. That this was a case within the act of 1850, and clause 3, § 2, art. 4, of the constitution [1 Stat. 18], because the words of that clause were in themselves on the common rules of construction as applicable to apprentices as to slaves, and that those who argued that slaves only were intended thereby, were bound affirmatively to make out their position, and that no text writer or judicial decision had ever expressly confined the operation of the clause of the constitution or the acts of 1793 [1 Stat. 302, c. 7], and 1850, to slaves. That, going further, the intention of the framers of the constitution (3 Madison Papers, 1446, 1456, 1532, 1558, 1589) had been to include more than slaves within that clause, and that such had been the original understanding of the provision (3 Elliott, Deb. 433, 436). That the framers of the constitution had thought it requisite expressly to include "persons bound to service for a term of years," that is, apprentices, among free persons, while, on the other hand, the New York amended fugitive act (2 Rev., 3d Ed., 657) had deemed it necessary expressly to except them from being included in the term "persons held to service or labor." See amended act, Laws 1840. That the same construction had been placed upon the constitutional provision in Jack v. Martin, 14 Wend. 522, 524, 525, and in Johnson v. Tompkins [Case No. 7,416]; and that Commissioners Ingersoll, (Conn.,) Loring, (Mass.,) Scovill, (N. Y.,) and Heazlitt, (Penna.,) had decided apprentices to be within the meaning of the act of 1850. Commissioner Morton (N. Y.) had, however, decided otherwise.

II. The indentures were valid in this court, because, as was in evidence, they had been impliedly ratified by the father, and because, whether so ratified or not, they were valid under the lex loci contractus. Story, Confl. Laws (3d Ed.) p. 186, § 100; Id. p. 189, § 103.

Mr. Parsons, for the apprentice, argued that this was not a case where the commissioner was authorized to issue the warrant of arrest, neither the constitution nor the acts of 1793 and 1850, being intended to affect any other than slaves (2 Story, Const. § 36; 3 Story, Const. § 805; Serg. Const. Law (1st Ed.) 387, 388; 3 Mad. Papers, 1447; Prigg v. Pennsylvania, 16 Pet. [41 U. S.] 611), and that this was shown conclusively by the fact that there were no adjudicated cases which decided apprentices to be within the constitution and acts of 1793 and 1850. That as fugitive slaves were unable to make valid contracts (Glen v. Hodges, 9 Johns. 67; Com. v. Griffith, 2 Pick. 11), this boy, if brought into the same category as a slave, must also be held incapable of validly binding himself to the claimant, and therefore the father's right was superior. That Commissioner Morton's decision was a proper exposition of the law on the subject. That quoad, the father these indentures were of no avail, he having never surrendered his rights over the boy. 3 Bl. Comm. 4; 1 Bl. Comm. 386; 4 Serg. & R. 211; 2 Watts & S. 670; Guthrie v. Murphy, 4 Watts, 80; Com. v. Crommie, 8 Watts & S. 339.

Mr. Rush, for the claimant, was not heard.

KANE, District Judge. I have had my attention called to the clause of the constitution, and the acts of congress of 1793 and 1850, providing for the rendition of persons held to labor, and the mode of so doing, very often; and the result of the attention heretofore bestowed, and the simple nature of the question to be decided, induce me to give my decision now. Taking the words of the clause of the constitution, and those of the act of 1850 alone, there can be no difficulty— the words are, "persons held to service or labor in one state under the laws thereof." Now I know of no words that could more clearly include apprentices than those I have quoted, for the plain effect of the very words of every indenture of apprenticeship is to hold the party to service; and if I could go beyond the words of the act of congress, and those of the article of the constitution, I should say, that every consideration of policy would dictate such a construction; because to decide the contrary, would be to discharge every apprentice in Pennsylvania that chose to cross the Delaware, and every one elsewhere that repaired to this state, and refused to return to his duty. The relation created by an indenture of apprenticeship is of such a character, that minors and orphans, instead of remaining ignorant and unprotected, become acquainted with the arts

and sciences, and are fitted for the duties of life; and to preserve such a state of usefulness the principles of extradition should be applied. It is true that no case has been cited in which a United States court or judge has decided this very question; but, perhaps, it is because the master has enforced his rights by seizing his apprentice and conveying him home, that this law, and that of 1793 has not been resorted to, and the want of use, or non user, has no influence upon the construction of a plainly expressed statute.

It is equally clear, that though a judge in considering the case of a fugitive slave in connexion with the statute, might speak only of a slave as within its purview and another in a case like the present might speak only of apprentices; yet each might with propriety use the words, "a person held to labor." It is equally to be observed, that no decision has been had in which it has been held, that the words of the constitution apply only to slaves. Most certainly this lad is held by a binding under a local proceeding, within the authority of any state to provide, and thereby to affect persons within her limits and subject to her jurisdiction. The marriage of a minor in Delaware, good by the law of that state, would be good everywhere else. Now one of the objects of apprenticeship is to prevent pauperism; and a child whose parents are in another and a distant state, and who have deserted him, is a pauper, notwithstanding the fact of his having lawful protectors who do not discharge their duty to him, and the disposition of him under the municipal regulations of the state in which he is deserted, is binding on him, and his parents too. It cannot, however, be said, that in this case the binding was against the father's will, for it is in proof before me, that it was with the consent of the father, who sent his son to Delaware on trial, to be bound if he was liked, and sent him back to that state after he was bound, when, on one occasion he had absconded. The question, therefore, is between the father and master on this proof; and it cannot be, that the father shall stand by, and see his son bound in another state, to receive education and nurture, and just when he becomes valuable to a master, to take him away; such a course would amount to positive fraud. The consent is so material that it is not going too far to say, that if a slave should come here with his master's consent and bind himself apprentice, or, being here, should so bind himself with the master's consent, in the first case he would not be a fugitive slave within the meaning of the act of congress, and in the second the master would not be allowed to question the validity of the indenture. This case, therefore, returns to the commissioner for adjudication, he being now in possession of my views on the subject. Relator remanded to the custody of the marshal.